UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-61-CHL

**CARLOS M. JAMES,**                                                              **Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY,**                              **Defendant.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is a Motion to Dismiss (DN 18) filed by the Commissioner of Social Security. The Commissioner seeks to dismiss the complaint of plaintiff Carlos M. James pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that the Court lacks subject matter jurisdiction. James filed a response. (DN 20.) Therefore, this matter is ripe for review.

The parties have consented to the jurisdiction of a magistrate judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (*See* DN 21.) For the reasons set forth below, the Motion to Dismiss is granted.

**I.     BACKGROUND**

On May 23, 2001, the Social Security Agency ("SSA") notified James that his disability had ended, and that he was not entitled to disability insurance benefits ("DIB") payments from September 1998 to March 1999. (DN 18-2, p. 3; DN 25-2, p. 1.)

On January 31, 2002, the SSA revised its May 23, 2001 decision and sent James a notice stating that it had decided his disability had ended and that he was not entitled to payments beginning in February 1991. (DN 18-2, p. 3; DN 18-3.) The notice explained that the SSA pays

benefits for the month disability ends and the following two months after, which, in James's case, was November 1990 through January 1991. (DN 18-3, p. 2.) This resulted in the cessation of payments beginning in February 1991. (*Id.*) The notice also informed James that he would be informed later regarding any overpayment due, and that he could request a hearing with an administrative law judge ("ALJ"). (*Id.*)

On March 8, 2002, the SSA received a request for a hearing by an ALJ from James regarding the cessation of his disability benefits. (DN 18-2, p. 3; DN 18-4, p. 2.) Although not specifically stated in the request, the Court assumes that the request for hearing was made in response to the January 31, 2002 revised decision.

On May 19, 2002, the SSA sent James a letter informing him that he was not entitled to DIB beginning November 1993 and was not due any benefits from work/earnings for January 1991 through October 1993; as a result, James had been overpaid a total of $142,690.70. (DN 18-5, p. 2; DN 18-2, p. 3.) The letter does not provide any explanation as to why or how this happened. Regardless, the letter informed James that he had sixty days to appeal the decision; the letter also explained various methods of repayment and ways to obtain a waiver of the collection of repayment. (DN 18-5, p. 2.) According to Kimberly Johnson, a Retirement and Survivors Program Insurance Expert with the SSA, there is no indication in SSA records that James timely requested reconsideration of this overpayment decision. (DN 18-2, p. 3.)

On December 23, 2002, James, via his counsel, withdrew his March 8, 2002 request for a hearing. (DN 18-6, p. 2.) This request was granted by the ALJ a day later. (DN 18-7, p. 4.) James's withdrawal of his request for a hearing left in effect the SSA's cessation of benefits determination dated May 23, 2001. (DN 18-2, p. 3; *see also* DN 18-7, p. 4 ["Accordingly, the

2

request for hearing is hereby dismissed. The determination dated May 23, 2001, remains in effect."].) The Court assumes that this means that the cessation of benefits determination dated May 23, 2001 – as revised on January 31, 2002 – remained in effect.

On February 10, 2004, the SSA sent a letter to James informing him that if he became entitled to benefits in the future, he would not receive all payments due. (DN 18-8, p. 2.) The letter stated, in part:

> On form SSA-454, Report of Continuing Disability Interview, that you signed on June 6, 2001 you were specifically asked if you had worked since 3/15/99 and you answered NO. On another form SSA-454 received signed, but not dated, in the New Albany District Office on November 14, 2000 you showed in question 11 that your last employment was on March 15, 1999. In your answers to these questions you concealed substantial work you had done for RB Carrier in Jeffersonville IN from August 30, 2000 until they released you in October 2000.

(*Id.*) Based on this information, the SSA informed James that he would be assessed a penalty. (*Id.*) A "penalty" is when the SSA does not pay a person; the first time the SSA applies a penalty, it will not make payments for six months. (*Id.*) The February 10, 2004 letter informed James that he had sixty days to request an appeal. (*Id.* at 3.) James apparently appealed the February 10, 2004 decision. (*See* DN 18-2, p. 4 ["Mr. James appealed the sanctions determination . . . ."].)

On November 23, 2006, an ALJ issued a decision regarding the penalty/sanctions assessed against James, finding that he had made statements of material fact and omitted facts in obtaining DIB payments that he knew, or should have known, were false or misleading, or that, at a minimum, he omitted a material fact. (DN 18-9, p. 5 [November 12, 2010 ALJ decision

3

recounting history of case].)[1] As a result, the ALJ found that sanctions were appropriate. (*Id.* at 6.) During James's appeal of the November 23, 2006 decision, however, the SSA apparently lost the evidentiary record, and the Appeals Council remanded the case back to the ALJ to reconstruct the record and re-hear the case. (*Id.* at 5-6.)

On August 6, 2010, the ALJ held a hearing at which James maintained that he committed no wrong. (*Id.* at 6-7.)

On November 12, 2010, the ALJ issued a decision regarding the penalty/sanctions. (DN 18-9.) In the decision, the ALJ recounted the above case history stemming from the November 23, 2006 decision, including the loss of the evidentiary record during that appeal process. (*Id.* at 6-7.) The ALJ stated that his attempt to reconstruct the record or evidence as it existed at the time of his November 23, 2006 decision were unsuccessful. (*Id.* at 6.) As a result, the ALJ concluded that, due to lack of evidence, no sanctions (*i.e.*, penalty) should apply in the future to any disability or other forms of monthly payments that should accrue to James on any of his Social Security accounts. (*Id.* at 7.)

On June 22, 2011, the SSA wrote a letter to James informing him that the sanctions previously applied to his account from January 2005 to June 2005 had been removed, and that $5,280.00 of his benefits had been used to reduce his overpayment. (DN 18-10, p. 2.) The letter informed James that he had sixty days to appeal this decision. (*Id.*)

---

[1] Specifically, the ALJ found that James worked at substantial gainful activity using his own social security number, as well as the number of his deceased brother, while receiving DIB in the amount of $142,690 after 1991. (*Id.* at 6.) During a disability review, James reported on June 6, 2001 that he had not worked since March 15, 1999, or that on November 14, 2000, he had intentionally misled the SSA by not listing work that he had performed since March 15, 1999. (DN 18-9, p. 6.)

On July 25, 2011, James, through his then-attorney, filed a request for reconsideration. (DN 18-11.) In the request for reconsideration, James did not contest the removal of sanctions of which he was informed on June 22, 2011; rather, he stated that there had never been an overpayment. (*Id.*)

On January 13, 2015, James filed a complaint (DN 1), which is entitled "COMPLAINT THIS IS A TRUE STORY OF CORRUPTION WITHIN THE FEDERAL POLITICAL STRUCTURE, ( GOVERNMENT )," in Western District of Kentucky. James's allegations in the complaint are not entirely clear. As best the Court can tell, James is attempting to contest the cessation of his benefits as well as the determination that he has been overpaid by the SSA. (*See, e.g.*, DN 1, p. 4 ["SOCIAL SECURITY STILL OWES ME MONEY."]; p. 5 [writing that a social security representative stated that the SSA accused plaintiff of forgery and fraud and "I AM GOING TO STOP YOUR BENEFITS."]; p. 7 ["I FILED ANOTHER RECONSIDERATION CLAIM, THE HEARING WAS ON NOVEMBER 17, 2005 A.L.J. PATRICK KIMBERLIN, HE AGREED WITH THE SOCIAL SECURITY ADMINISTRATION . . . ."]; p. 13 ["SOCIAL SECURITY ADMINISTRATION, OWE'S, CARLOS M. JAMES A HELL OF A LOT OF MONEY!"]; p. 15 ["THERE HAS NEVER BEEN, AN OVERPAYMENT . . . ."].). James also included the following documents in his complaint: (1) July 25, 2011 request for reconsideration (DN 1, pp. 10-13); (2) June 22, 2011 letter from SSA regarding removal of sanctions (*Id.* at 14); (3) November 12, 2010 letter regarding fully favorable ALJ decision (*Id.* at 37-39); and (4) the November 12, 2010 ALJ decision (*Id.* at 48-50).

## II. DISCUSSION

The Commissioner interprets James's complaint as seeking review of the overpayment decision, presumably the one that James was informed of on or around May 19, 2002. The Court also construes James's complaint as contesting the cessation of his DIB benefits, as revised, on January 31, 2002.

The Commissioner argues that James failed to exhaust his administrative remedies with respect to his claim(s), and therefore never received a "final decision" from the SSA as required to obtain judicial review by a federal district court. Therefore, the Commissioner argues that James's complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

In response, James requests that the Court not dismiss his complaint. James further states, "IF, THE UNITED STATES DISTRICT COURT, IS NOT THE CORRECT PLACE, AND/OR COURT, TO HAVE FIELD MY COMPLAINT WITH, PLEASE INFORM ME AS TO THE CORRECT COURT, AND THE ADDRESS, IN ORDER THAT I MAY FILE IN THE CORRECT COURT." (DN 20, p. 1.)

### A. Standard for Motion to Dismiss under Rule 12(b)(1)

Rule 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id*. (citing *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994)). *Id.* "A *facial* attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations

of the petition as true and construed in the light most favorable to the nonmoving party." *Ritchie*, 15 F.3d at 598; *see also Cartwright*, 751 F.3d at 759 ("A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the Court takes the allegations of the complaint as true for purposes of the Rule 12(b)(1) analysis."). "A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Ritchie*, 15 F.3d at 598. No presumptive truthfulness applies to the factual allegations. *Id*. "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright*, 751 F.3d at 759-60. The plaintiff bears the burden of proving subject matter jurisdiction exists. *Id*. at 760.

The Commissioner asserts that the present Motion to Dismiss is a factual attack on the Court's subject matter jurisdiction. Therefore, the Court need not presume the truthfulness of the allegations in the complaint and instead must examine the facts and determine whether subject matter jurisdiction does or does not exist. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In doing so, the Court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id*. Therefore, in determining whether subject matter jurisdiction exists, the Court will consider the declaration of Kimberly Johnson, a Retirement and Survivors Program Insurance Expert with the SSA, as well as the various SSA documents submitted by the Commissioner in support of the Motion to Dismiss.

B.  **Judicial Review Permitted of Final Decision of Commissioner**

Where a statute – such as the Social Security Act, 42 U.S.C. § 301, *et seq*. (2012) – creates a right and provides a special remedy, that remedy is exclusive. *See United States v. Babcock*, 250 U.S. 328, 331 (1919) ("These general rules are well settled: (1) That the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts. (2) That where a statute creates a right and provides a special remedy, that remedy is exclusive.") (internal citations omitted).

Judicial review of Social Security claims is governed by 42 U.S.C. §§ 405(g) and (h). *Willis v. Sec'y of Health and Human Servs*., 931 F.2d 390, 395 (6th Cir. 1991). 42 U.S.C. § 405(h) states:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

"The first two sentences of section 405(h) guarantee that the 'administrative exhaustion will be required. Specifically, they prevent review of decisions of the Secretary save as provided in the [Social Security] Act, which provision is made in § 405(g).'" *Willis*, 931 F.2d at 396 (quoting, in part, *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)).

42 U.S.C. § 405(g) states, "Any individual, *after any final decision* of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, *may obtain a review of such decision by a civil action commenced within sixty days*

8

after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g) (emphasis added). Therefore, "[t]hree conditions must be satisfied to obtain judicial review under § 405(g): (1) a final decision of the [Commissioner] after a hearing; (2) commencement of a civil action within sixty days after the mailing of notice of such decision, or within such additional time as the [Commissioner] may permit; (3) filing of the action in the appropriate district court." *Willis*, 931 F.2d at 396. The last two requirements, (2) and (3), are waivable by the parties; however, the first requirement of a final decision is not waivable. *Id*. (citing *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975)); *see also Califano v. Sanders*, 430 U.S. 99, 108 (1977) ("This provision clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.'").

The Supreme Court has held that the finality requirement consists of two elements. *Willis*, 931 F.2d at 396. First, a claim of benefits must be presented to the Commissioner.[2] *Id*. Second, the decision must be final in that the claimant has exhausted the administrative remedies prescribed by the Commissioner.[3] *Id*. "The term 'final decision' is not defined in the Social Security Act and "its meaning is left to the [Commissioner] to flesh out by regulation." *Salfi*, 422 U.S. at 766; *see also Willis*, 931 F.2d at 397 (stating that the term "final decision" is left undefined by the Social Security Act and describing the four-step process set forth in the

---

[2] This element is jurisdictional and absent such a claim, there can be no review. *Id*.

[3] This element is not jurisdictional and can be waived by the Commissioner, and in some circumstances, by the Court. *Id*. (citing *Bowen v. City of New York*, 476 U.S. 467, 482-83 (1986) and *Matthews v. Eldridge*, 424 U.S. 319, 328 (1976)). "Exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures." *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006). Because James has not raised a colorable constitutional claim, however, the Court finds that he was required to exhaust his administrative remedies and obtain a final decision by the Commissioner.

regulations prescribed that culminate in a final decision of the Secretary subject to judicial review). As the Court has stated, James's failure to exhaust his administrative remedies is at issue here. (*See* DN 18-1, p. 4 ["Since Mr. James failed to exhaust his administrative remedies in a timely manner, he never received a final agency decision."].)

Social Security regulations set forth a four-step process by which a claimant can exhaust his administrative remedies and obtain a judicially-reviewable final decision. *See* 20 C.F.R. § 404.900(a). First, a claimant is entitled to an initial determination of disability. *Id.*; *Willis*, 931 F.2d at 397. Second, if dissatisfied with the initial determination, the claimant may request a reconsideration of that initial determination. *Id*. Third, if dissatisfied with the reconsideration determination, the claimant may request an evidentiary hearing before an ALJ. *Id*. Fourth, if dissatisfied with the ALJ's decision, the claimant may request that the Appeals Council review the ALJ's decision. *Id*. When a claimant has completed these steps in the administrative review process, the Commissioner will have made her final decision, and the claimant may request judicial review by filing an action in the appropriate federal district court. *Id*. In other words, "for purposes of the finality requirement of § 405(g), a claim becomes final after the Appeals Council renders its decision." *Willis*, 931 F.2d at 397.

### 1. Overpayment decision

The SSA informed James of the overpayment decision on or about May 19, 2002. (DN 18-5.) In the May 19, 2002 letter, the SSA informed James that he had sixty days to ask for an appeal. (*Id*. at 3.) There is no indication in SSA records that James requested an appeal. (*See* DN 18-2, p. 3.) Furthermore, James has not offered any proof that he timely requested reconsideration of the May 19, 2002 overpayment decision. Instead, it appears that James

attempted to contest the overpayment decision in his July 25, 2011 request for reconsideration. It is clear, however, that by July 2011, the time for requesting reconsideration of the May 19, 2002 overpayment decision had long past. *See* 20 C.F.R. § 404.909(a) ("We shall reconsider an initial determination if you or any other party to the reconsideration files a written request . . . [w]ithin 60 days after the date you received notice of the initial determination . . . ."). Therefore, James failed to timely exhaust his administrative remedies and obtain a final decision from the Commissioner. As a result, the Court lacks subject matter jurisdiction to hear his claim regarding the SSA's overpayment decision. *See, e.g.*, *Wright v. Comm'r of Soc. Sec.*, No. 09-14257, 2010 WL 3290984, at *2 (E.D. Mich. May 12, 2010), *report and recommendation adopted*, No. 09-14257, 2010 WL 3291834 (E.D. Mich. Aug. 14, 2010) ("Clearly, the Plaintiff has not exhausted his administrative remedies, as required by § 405(g). Nor has the Commissioner waived the exhaustion requirement. This Court lacks subject matter jurisdiction and therefore, under Fed. R. Civ. P. 12(b)(1), the complaint should be dismissed.") (internal citations omitted).

        2.     **Cessation of DIB benefits**

Similarly, the Court lacks subject matter jurisdiction to hear any claim brought by James regarding the cessation of his DIB benefits. On January 31, 2002, the SSA sent James a notice stating that it was revising its May 23, 2001 decision regarding the cessation of his disability payments. On or about March 8, 2002, James requested a hearing by an ALJ with respect to the cessation of his disability benefits; however, on December 23, 2002, James withdrew his request for a hearing, which was granted by the ALJ a day later. Consequently, the May 23, 2001 decision – as revised on January 31, 2002 – regarding the cessation of his benefits remained in

effect. There is no evidence that James took any further action to appeal this decision or renew his request for an evidentiary hearing by an ALJ; that is, there is no evidence that James received a final decision from the Commissioner. Even if one considered the January 31, 2002 decision a final one, James's complaint was filed in January 2015, approximately thirteen years later. Consequently, the Court also lacks subject matter jurisdiction to hear any claim regarding the SSA's January 31, 2002 decision regarding the cessation of DIB benefits to James.

### C.      Motion to Set a Trial Date (DN 22)

James has also filed what appears to be a motion requesting a date for trial. The Court has found that James's complaint is due to be dismissed because the Court lacks subject matter jurisdiction to hear his claims. Therefore, James's motion requesting a trial date will be denied as moot.

### D.      Motion for Relief from Order (DN 27)

The Commissioner has filed a motion requesting relief from the Court's Order (DN 23) directing production of all the documents related to the claims made by James under the SSA or, in the alternate, to explain why the documents are not available. The Court finds that the Commissioner has sufficiently explained why these documents are not readily available and has thus complied with the Order; the Commissioner has also provided a more detailed history of James's claims. Therefore, relief from the Court's Order is not necessary, and the Motion for Relief from Order will be denied.

## III.    CONCLUSION

Accordingly,

12

IT IS ORDERED that the Motion to Dismiss (DN 18) is GRANTED.  A final judgment will be entered separately.

IT IS FURTHER ORDERED that the Motion to Set a New Trial Date (DN 22) is DENIED.

IT IS FURTHER ORDERED that the Motion for Relief from Order (DN 27) is DENIED AS MOOT.


cc: Counsel of record
    *Pro se plaintiff*